EUREKA PRINTING COMPANY, A NEW JERSEY CORPO-RATION, PLAINTIFF-APPELLANT, v. DIVISION OF EM-PLOYMENT SECURITY, DEPARTMENT OF LABOR AND INDUSTRY, OF THE STATE OF NEW JERSEY, DE-FENDANT-RESPONDENT.

Argued February 27, 1956—Decided April 23, 1956.

*Mr. Robert F. Allabough* argued the cause for the appellant (*Messrs. Evans, Hand and Evans,* attorneys).

*Mr. George J. Miller* argued the cause for the respondent (*Mr. Herman D. Ringle,* attorney).

The opinion of the court was delivered by

JACOBS, J.    This is an appeal under *R. R.* 4:88–8 from a decision by the Commissioner of Labor and Industry which affirmed a ruling that the plaintiff was liable for the payment of contributions to the State Disability Insurance Fund for the year 1949 in the sum of $1,538.42 plus interest.    While the appeal was pending in the Appellate Division we certified it under *R. R.* 1:10–1.

On October 27, 1948 the plaintiff applied for approval of its then existing plan for insurance benefits to its employees in lieu of the State of New Jersey coverage under the Temporary Disability Benefits Law.    Thereafter the plan was approved and in view thereof the plaintiff entertained the belief that it was under no obligation to pay any contributions to the Temporary Disability Benefits Fund for the calendar year 1949.    However, the plan did not actually cover all of the company's employees and, as a result, the plaintiff owed contributions for 1949; the contributions became due on January 31, 1950 but they were never paid. On February 3, 1954 the Division of Employment Security first advised the plaintiff that since its original plan covered

only members of the Federation of Dyers, Finishers, Printers and Bleachers of America after a qualifying 30 days of employment, there were contributions due on 1949 wages paid to non-covered employees and on 1949 wages paid to members of the Federation during the first 30 days of employment. On May 5, 1954 the Division issued its notice and demand for payment of a deficiency assessment in the sum of $1,538.42 plus interest. Pursuant to the plaintiff's petition an administrative hearing was held and on March 7, 1955 the Director of the Division of Employment Security sustained the assessment; on further administrative review the Director's decision was approved by the Commissioner of Labor and Industry on September 22, 1955. Notice of Appeal to the Appellate Division was duly filed by the plaintiff on October 17, 1955.

The facts on appeal have been stipulated and the only legal issue presented by the parties is whether the Division's claim against the plaintiff has been barred by any pertinent statute of limitations. It is admitted that the plaintiff's contributions became due on January 31, 1950 but were not paid because of the honest, though mistaken, belief by the plaintiff that they were not owing; it is also admitted that no claim therefor was ever made by the Division until more than four years had elapsed. In explanation of its delay the Division's brief on appeal refers to the magnitude of its overall task as evidenced by statistics set forth in its annual reports. It would have been better practice to have embodied these statistics in the record below (*Pennsylvania Railroad Co. v. Department of Public Utilities,* 14 *N. J.* 411, 427 (1954)) ; in any event they are not in dispute and we take judicial notice of them.

*R. S.* 43:21–14(*b*), under which the plaintiff's obligation for contributions became due, originally contained no limitation whatever. However, it was duly amended by *L.* 1952, *c.* 187, *p.* 658, which added the following: "provided, however, that except in the event of fraud, no employer shall be liable for contributions, penalties, or interest unless assessed before four years have elapsed from the time when

the contributions were due." See also *L.* 1952, *c.* 337; *L.* 1955, *c.* 65. The Division contends that this amendment was wholly prospective and had no application to claims which were payable prior to its passage; on the other hand the plaintiff contends that it applied not only to future claims but also retrospectively to past due claims where, as here, there still remained reasonable time within the prescribed four-year limitation during which the Division could assert such claims. The plaintiff points out that *L.* 1952, *c.* 187, was actually approved on May 16, 1952 (though it was not effective until July 1, 1952) and that the four-year period (calculated from the date on which its obligations became due) did not expire until January 31, 1954.

Although specific limitations had been established earlier in Roman and English Law, the first general limitation applicable to personal actions in the common law was enacted in 1623. See *Atkinson, Some Procedural Aspects of the Statute of Limitations,* 27 *Col. L. Rev.* 157, 165 (1927); *Note, Developments in the Law—Statutes of Limitations,* 63 *Harv. L. Rev.* 1177, 1178 (1950). Courts at first viewed such limitations with hostility but they soon accepted the position, which now prevails, that they should not be so regarded since "they rest upon sound policy, and tend to the peace and welfare of society." McLean, J., in *McCluny v. Silliman,* 3 *Pet.* 270, 278, 28 *U. S.* 270, 278, 7 *L. Ed.* 676, 679 (1830). *Cf. Pinckney and Bruen v. Burrage and Stephens,* 31 *N. J. L.* 21, 23 *(Sup. Ct.* 1864); *Belles v. Belles,* 12 *N. J. L.* 339, 346 *(Sup. Ct.* 1831). See also 1 *Wood, Limitations* 55 *(4th ed.* 1916): "While formerly pleas of limitations were looked upon with disfavor, statutes of limitations are now viewed with favor as statutes of repose, and are construed liberally, and so as to advance the policy they are designed to promote."

Ordinarily the federal and state governments are immune from the operation of general statutes of limitations; historically this appears to be a survival of the Crown's prerogatives, but in modern times it is said to rest upon the desire to protect the public revenues from loss resulting from

the inadvertence or neglect of public employees. See *Trustees for the Support of Public Schools v. Ott & Brewer Co.*, 135 *N. J. Eq.* 174, 177 (*Ch.* 1944); *Guaranty Trust Co. of New York v. United States*, 304 *U. S.* 126, 132, 58 *S. Ct.* 785, 82 *L. Ed.* 1224, 1227 (1938). *Cf. Keasbey, The Statute of Limitations and the Rights of the Public*, 19 *N. J. L. J.* 23 (1896). However, there would seem to be nothing to prevent the federal and state governments from forthrightly providing that claims by them or their governmental divisions shall be barred if not pursued within a stated period of time. See *United States v. Lindsay*, 346 *U. S.* 568, 74 *S. Ct.* 287, 98 *L. Ed.* 300 (1953); *State v. Owen*, 23 *N. J. Misc.* 123, 130 (*Sup. Ct.* 1945). Such action fairly affords repose to those concerned and also tends to serve the public interest by stimulating the expeditious assertion of public claims; it should not meet with resistance in the form of narrow judicial construction. Compare *United States v. Updike*, 281 *U. S.* 489, 496, 50 *S. Ct.* 367, 74 *L. Ed.* 984, 991 (1930), with *Independent Coal & Coke Co. v. United States*, 274 *U. S.* 640, 650, 47 *S. Ct.* 714, 71 *L. Ed.* 1270, 1278 (1927). See *Note, Immunity from Statutes of Limitations and Other Doctrines Favoring the United States as Plaintiff*, 55 *Col L. Rev.* 1177 (1955).

In the instant matter it is not questioned that the Legislature appropriately expressed its intention to have the newly created four-year period of limitation apply to contribution claims by the Division of Employment Security; whether it intended to have it apply to pre-existing claims must rest upon judicial interpretation of the legislative language, read in the light of its history, purpose and context and with the assistance of such extrinsic aids and general rules of statutory interpretation as may be pertinent. Courts throughout the country have on many occasions dealt with comparable legislative enactments and have expressed varying views. Some have taken the position that, unless it clearly provides otherwise, a statute of limitations is to be construed as purely prospective and as having no application to causes of action which accrued prior to its passage. *Taggart v.*

*Mills,* 180 *Md.* 302, 23 *A.* 2d 832 (1942); *Miller v. Fallon,* 134 *Me.* 145, 183 *A.* 416 (1936). Others have taken the position that, unless the statute clearly provides otherwise, the period of limitations commences when the cause of action is first subjected to its operation; thus a cause of action which accrued prior to the passage of a two year statute of limitation could be asserted within two years after such passage. *Sohn v. Waterson,* 17 *Wall.* 596, 84 *U. S.* 596, 21 *L. Ed.* 737 (1873); *Olivas v. Weiner,* 127 *Cal. App.* 2d 597, 274 *P.* 2d 476 (1954). Still others have taken the position that, unless it clearly provides otherwise, a statute of limitations is to be construed retroactively and applicable to claims which accrued before its passage, provided the newly prescribed period of limitations had not entirely run and the unexpired portion constituted a reasonable time within which action could still be commenced. *Mulvey v. City of Boston,* 197 *Mass.* 178, 83 *N. E.* 402 (1908); *Orlicki v. McCarthy,* 4 *Ill.* 2d 342, 122 *N. E.* 2d 513 (1954). See 6 *Vand. L. Rev.* 135 (1952); 39 *Yale L. J.* 757 (1930); 6 *U. Cinn. L. Rev.* 100 (1932); 32 *Chi-Kent L. Rev.* 346 (1954). *Cf. State ex rel. Oklahoma Employment Security Comm. v. Eddie,* 195 *Okl.* 26, 154 *P.* 2d 763 (1944).

The cases which have given prospective application to statutes of limitation have relied heavily on the widely recognized principle that statutes look to the future and are not to be given retroactive effect unless their language so dictates; they decline to draw any distinction between enactments which affect substantive rights and those which affect only procedures or remedies. See *United States v. St. Louis, S. F. & T. R. Co.,* 270 *U. S.* 1, 3, 46 *S. Ct.* 182, 70 *L. Ed.* 435, 437 (1926); *National Tailoring Co. v. Scott,* 65 *Wyo.* 64, 196 *P.* 2d 387 (1948). The cases, such as *Sohn v. Waterson, supra,* which have applied the doctrine that the period of limitations is to commence when the cause of action is first subjected to the operation of the statute have generally involved situations where there were no earlier statutes of limitations and purely prospective applications would mean that actions on pre-existing claims could be maintained at

any distant time. In *Superior Engraving Co. v. National Labor Rel. Bd.,* 183 *F. 2d* 783, 789 (7 *Cir.* 1950), *certiorari* denied 340 *U. S.* 930, 71 *S. Ct.* 490, 95 *L. Ed.* 671 (1951), the court recently declined to apply *Sohn v. Waterson, supra,* to an amendatory provision in the Labor Management Relations Act, 29 *U. S. C. A.* § 160(*b*), that "no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board." The court rejected the Board's contention that a charge filed within six months of the effective date of the amendatory provision but more than six months after the unfair labor practice was within time; it found a Congressional intent that the amendatory provision should apply to pre-existing unfair labor practices from the fact that it did not take effect until 60 days after its enactment and from the further fact that there was a statutory exception in favor of persons who were prevented by service in the armed forces from filing a charge within the prescribed period. At this juncture it may be noted that although in the case before us L. 1952, *c.* 187, was approved on May 16, 1952 it contained the following provision with respect to its later effective date :

"This act shall take effect July first, one thousand nine hundred and fifty-two, except that the change in maximum weekly benefit amount as provided in section 43 :21–3(c)(1) of the Revised Statutes as amended herein shall apply only with respect to benefit years beginning on and after July first, one thousand nine hundred and fifty-two."

See *Connecticut Mut. Life Ins. Co. v. Moore,* 297 *N. Y.* 1, 74 *N. E. 2d* 24, 27 (1947), affirmed 333 *U. S.* 541, 68 *S. Ct.* 682, 92 *L. Ed.* 863 (1948).

The cases which have held that statutes of limitation were to be applied to pre-existing causes of action (provided a reasonable time still remained for their assertion) have carefully distinguished between such enactments which deal with remedies and others which deal with substantive rights. Thus in *Mulvey v. City of Boston, supra,* a statute was passed in 1902 by the Legislature of Massachusetts providing

that actions of tort against counties, cities or towns shall be commenced only within two years next after the cause of action accrues. The plaintiff's cause of action accrued about five months prior to the passage of the statute; in holding that it was barred by the plaintiff's failure to institute his proceeding within two years of the accrual of his cause of action, Chief Justice Knowlton said [197 *Mass.* 178, 83 *N. E.* 403]:

"In ascertaining the meaning of statutes it is a general rule that they are intended to operate prospectively and not retroactively. It follows, therefore, that, in the absence of an express provision to that effect, they do not relate back, to change previously existing substantive rights of property. Most such rights cannot constitutionally be affected by legislation. But in the prospective operation of a statute which deals only with remedies and the enforcement of rights, the future procedure under the new legislation is as applicable to previously existing substantive rights as to those afterwards acquired. Statutes of limitation relate only to the remedy, and they control future procedure in reference to previously existing causes of action. This is the general rule in regard to such statutes, where they contain no language clearly limiting their application to causes of action arising in the future."

More recently, Chief Justice Bristow of the Supreme Court of Illinois had occasion to deal with the subject in *Orlicki v. McCarthy, supra* [4 *Ill.* 2d 342, 122 *N. E.* 2d 518]. There the plaintiff was injured in July 1949; in August 1949 the Legislature amended the Illinois Liquor Control Act, *Ill. Rev. Stat.* 1949, c. 43, § 135, so as to embody a two-year period of limitation; the plaintiff did not institute his action until September 1951. In holding that his action was barred, the court first expressed the view that the Legislature intended its amendment to apply to pre-existing causes of action; it then went on to say:

"Furthermore, even if the intention of the legislature were not ascertainable, the 1949 amendment to the Liquor Control Act, imposing a time limitation on the right of action conferred in that act, should be retroactively applied on the basis of the substantial precedent holding such time limitation amendments to be procedural in character. *Smolen v. Industrial Comm.* [324 *Ill.* 32, 154 *N. E.* 441]; *McQueen v. Connor* [385 *Ill.* 455, 53 *N. E.* 2d 435];

*Diamond T. Motor Co. v. Industrial Comm.* [378 *Ill.* 203, 37 *N. E.* 2d 782] ; *Duquoin Township School Dist. No.* 100 *v. Industrial Comm.* [329 *Ill.* 543, 161 *N. E.* 108] ; *Chicago Board of Underwriters v. Industrial Comm* [332 *Ill.* 611, 164 *N. E.* 216].

That principle is expounded at length by the Missouri court in *Clark v. Kansas City, St. Louis & C. Railroad Co.*, 219 *Mo.* 524, 118 *S. W.* 40, where a retroactive application was given a statute changing the time limitations for instituting an action for wrongful death. The court quoted from *Endlich, Interpretation of Statutes, secs.* 287, 288, to the effect that the general rule seems to be in accordance with the English law, that statutes pertaining to the remedy, *i. e.*, to the course and form of proceedings for the enforcement of a right, but which do not affect the substance of the right, nor destroy all remedy for its enforcement, are retrospective, and apply to causes of action subsisting at the date of their enactment. In applying that principle to the interpretation of the time limitation amendment therein, the court stated that since it was a remedial statute there was no presumption that it was intended to operate prospectively, and that it should be construed 'to further its life in advancing the remedy and striking down the mischief.' "

Our own decisions have repeatedly differentiated between enactments affecting substantive rights and enactments affecting only procedures and remedies. See *Morin v. Becker,* 6 *N. J.* 457, 470 (1951) ; *Neel v. Ball,* 6 *N. J.* 546, 551 (1951) ; *Pennsylvania Greyhound Lines, Inc. v. Rosenthal,* 14 *N. J.* 372, 381 (1954). *Cf. State v. United States Steel Corp.,* 19 *N. J. Super.* 274, 297 *(Ch. Div.* 1952), affirmed 12 *N. J.* 38 (1953) ; *Smith's Executors v. Tucker,* 17 *N. J. L.* 82, 85 *(Sup. Ct.* 1839). In *Morin v. Becker, supra,* a new statute permitting non-unanimous verdicts in civil cases was applied to a pre-existing cause of action; in support of the court's holding Chief Justice Vanderbilt pointed out that while legislative enactments generally operate prospectively, "statutes relating to remedies or procedures do not create new or take away vested rights" and may therefore be applied retrospectively. Similarly, in *Neel v. Ball, supra,* Justice Wachenfeld noted that while statutes relating to substantive rights are ordinarily construed to operate prospectively this is not true "in the construction of statutes relating solely to procedure"; and in *Pennsylvania Greyhound Lines, Inc. v. Rosenthal, supra,* Justice Heher remarked that while generally statutes are to be deemed

operative *in futuro* only, a remedial and procedural statute is ordinarily applicable to pending actions.

New Jersey decisions have heretofore applied statutes of limitations to pre-existing causes of action where it appeared that at the time of their enactment there still remained a reasonable period during which claims could be asserted. See *Johnson v. Asbury Park Press, Inc.,* 14 *N. J. Misc.* 282 *(Sup. Ct.* 1936), affirmed 117 *N. J. L.* 533 *(E. & A.* 1937); *Marston v. Seabury,* 3 *N. J. L.* 435 [*Reprint* 28] *(Sup. Ct.* 1808). *Cf. Bretthauer, Adm'r v. Jacobson,* 79 *N. J. L.* 223, 225 *(Sup. Ct.* 1910); *Union County Building & Loan Ass'n v. Weltchek,* 12 *N. J. Misc.* 847 *(C. P.* 1934). In the *Johnson* case an allegedly libelous article appeared on March 7, 1934; on April 30, 1934 the Legislature passed an act which provided for a one year limitation; the plaintiff instituted his action on February 25, 1936. In holding that the limitation applied to the plaintiff's cause of action, the court noted that while ordinarily statutes are not given any retrospective application, this is not true "where the right to sue is not affected and only the remedy involving the time within which the action must be brought is the subject of the legislation." The court referred approvingly to the early New Jersey case of *Marston v. Seabury, supra,* where Justice Pennington applied a 1799 statute (prescribing a 16 year limitation) to bar an action instituted more than 16 years after it had become due in 1787; in the course of his opinion he stressed the fact that the statute was in general terms and contained nothing affirmative to indicate that the Legislature did not intend to embrace earlier as well as later obligations. The holdings in the *Johnson* and *Marston* cases furnish support to the appellant's position in the instant matter. *L.* 1952, *c.* 187, contained nothing to indicate that the Legislature intended to confine its application to future causes of action and leave pre-existing causes of action wholly without any applicable period of limitation; after its passage there still remained over a year and a half during which the respondent could have made its assessment and still have come within the prescribed statutory

period of four years from the date when the appellant's contributions were due; it seems to us that giving due consideration to the magnitude of the respondent's task (with which the Legislature was fully aware) this clearly constituted a reasonable time for the assertion of the respondent's claim. *Cf. Annotation, Reasonableness of period allowed for existing causes of action by statute reducing period of limitation,* 49 *A. L. R.* 1263 (1927); 120 *A. L. R.* 758 (1939).

Whatever may be gleaned from the history, purpose and context of *L.* 1952, *c.* 187, confirms the view that the Legislature contemplated retrospective application within the doctrine embraced in the *Johnson* and *Marston* cases. Thus, the appellant asserts and the respondent seems to acknowledge that since the passage of the original New Jersey Unemployment Compensation Act (*L.* 1936, *c.* 270) there have been a series of amendments designed to lighten somewhat the employer's responsibilities. The four-year limitation amply evidenced the legislative view that it would be contrary to the public interest and unfairly burdensome to employers to continue subjecting them indefinitely to the assertion of old contribution claims. The considerations supporting this view were as applicable to pre-existing as to future claims and the terminology used by the Legislature tended to indicate that both types were to be included; thus the prescribed period of limitation began "when the contributions *were due*"; and the fact that *L.* 1952, *c.* 187, did not take effect immediately and designated a single specific provision for prospective application lends some slight supporting weight. See *Superior Engraving Co. v. National Labor Rel. Bd., supra.* In all, we are satisfied that a just and reasonable construction of the statutory language compels the conclusion that the claim asserted by the respondent against the appellant was legally barred by limitations.

The respondent contends that such retrospective application of *L.* 1952, *c.* 187, renders it unconstitutional under the principles expressed in *Wilentz v. Hendrickson,* 133 *N. J. Eq.* 447, 464 (*Ch.* 1943), affirmed 135 *N. J. Eq.* 244 (*E. & A.* 1944). The decision there was that a legislative

enactment which waived the State's vested rights to accrued interest claims against railroads constituted a donation in violation of *Article* I, *paragragh* 20 of the *Constitution of 1844*; it has no application to the instant matter in which the passage of *L*. 1952, *c*. 187, did not impair any of the State's vested rights or deprive the State of any of its remedies. All it did as to pre-existing claims such as that against the appellant, was to limit the State to the levying of its assessments within a reasonable time thereafter; this served not only the interests of those concerned but also tended to serve the public interest by stimulating the early assertion of the State's claims. In no accepted sense did it amount to a gift or donation by the State and we have been referred to no case in which any court has suggested anything to the contrary. Indeed, in *California Employment Stabilization Comm. v. Payne,* 31 *Cal.* 2*d* 210, 187 *P.* 2*d* 702, 705 (1948), the Supreme Court of California took the further position that a limitation amendment which immediately served to cut off the state's claim for a past due contribution under its Unemployment Insurance Act had a public purpose and therefore did not violate its constitutional prohibition against gifts of public money or property to private persons. In the course of his opinion for the court, Chief Justice Gibson said:

"It would appear that any incidental benefit to the employer in applying this section to existing causes of action so as to cut off the commission's right to sue for the contributions where no intent to evade the act is present may well be outweighed by the public benefit which would result if enforcement officers spent their time on fresh claims rather than stale ones. An additional element of public benefit is present where, as here, the statutory scheme is not purely a revenue measure but is enacted as part of a broad social program involving continuing contributions and benefits. Whether the employer would be able to pay a large assessment based upon many years of innocent delinquencies becomes important. It is possible that an employer who has not made collections from his employees or set aside a fund for the payment of the assessments, would be rendered insolvent or bankrupt if compelled to pay the amount of the accumulated assessments, plus interest and penalties. Under such circumstances, the result would be to force the employer out of business, thereby depriving his employees of work and, to that extent defeating the primary object of the legislation which is to protect employees against unemployment. It may well be that

the Legislature considered the collection of a stale claim for delinquent contributions an additional hazard and therefore undesirable to the adequate functioning of the system. Accordingly, the benefits to be derived from the restoration of the three-year period within which to sue on claims based on errors made in good faith and without intent to evade the act may serve a valid public purpose in limiting the expenditures of time and money in the effort to enforce stale claims which may have little or no value and might increase the economic hazards which the statutory scheme was designed to lessen."

*Cf. Lynch v. Borough of Edgewater,* 8 *N. J.* 279, 291 (1951).

Reversed, with direction that the assessment, levied by the Division of Employment Security against the plaintiff, be set aside.

*For reversal*—Chief Justice VANDERBILT, and Justices BURLING, JACOBS and BRENNAN—4.

*For affirmance*—Justices HEHER and OLIPHANT—2.